IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, LLC<br>    PLAINTIFF,<br><br>V.<br><br><br>LESLIE LEIGHANN MARTINEZ, WIZARDRY TUTORING, LLC, APRIL SANTOS, AND LISA LEVACK,<br>    DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO. 5:26-CV-1714-DAE |

**DEFENDANT LISA LEVACK'S 12(B)(6) MOTION TO DISMISS**

TO THE HONORABLE JUDGE DAVID EZRA:

NOW COMES Lisa Levack, captain in the United States Army, RN, CCRN ("Capt. Levack") and files this, her Motion to Dismiss, and would show the Court as follows:

**FACTUAL BACKGROUND[1]**

1.      Capt. Levack is an active-duty officer in the United States Army, with over twenty years of service between an initial enlistment in the United States Marine Corps and her current commission with the United States Army.  In 2011, she was accepted to a nursing program, but her nursing education was delayed for a year after she received orders to deploy to Afghanistan.

2.      Upon returning from Afghanistan, Capt. Levack pursued and earned an Associate's Degree in Nursing, followed by a Bachelor of Science in Nursing in 2017 and a Master of Science

---

[1] These facts come partially from *Plaintiff's Original Complaint* [Docket No. 1] ("Complaint"), which are generally assumed to be true for purposes of a motion to dismiss. *See Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016). Additional information has been included to give the Court some background on Capt. Levack.  Where the allegations in the Plaintiff ATI's claims conflict with the plain language of the documents referenced therein (including documents on file with the courts), however, it is the documents cited therein and on file with the courts that control.  *See, e.g., Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) (explaining that at the motion to dismiss stage, when the allegations in a pleading are inconsistent with the terms of a document attached as an exhibit, the terms of the document control). By reciting these facts, Capt. Levack does not admit that these facts are accurate or waive any challenges to the accuracy or to the conclusions Plaintiff ATI alleges flow from these facts.

1

in Nursing and Nursing Management in 2024. She served at Brooke Army Medical Center ("BAMC") as a surgical trauma nurse during COVID, then as officer-in-charge of a 28-bed intermediate medical unit at BAMC, and is currently a nurse case manager at the Soldier Recovery Unit of the Army Medical Corps. Capt. Levack has received over twenty military service medals and awards and holds a Secret security clearance.

3. Notwithstanding the above, Plaintiff has alleged without any due inquiry or factual support, that Capt. Levack's nursing licensure is "questionable." *See* Complaint at ¶ 17. Even a cursory inquiry using an internet web browser such as Google conducted by undersigned counsel with the search term "Lisa Levack nurse" consistently yielded two top results. The first result is Capt. Levack's LinkedIn profile, identifying her as an RN. The second result is an article from Post University profiling Capt. Levack's career as a military nurse.[2] Similarly, a search of the publicly available official Texas Board of Nursing License Verification system reveals that Lisa Levack has held a current RN license in Texas since August 30, 2024. The Texas Board of Nursing search page also includes a link to another resource that has nationwide information on licensing and disciplinary action. Nursys. Had Plaintiff searched "Lisa Levack" in Nursys, , the result would show that Capt. Levack was a registered nurse in North Carolina from June 2016 until November 2025 and has been a registered nurse in Texas since August 2024. A copy of a Nursys Quick Confirm report for Capt. Levack is attached hereto as **Exhibit A** to correct the record on this point.[3]

---

[2] https://post.edu/blog/texas-army-nurse-prepares-for-next-chapter-in-leadership-with-msn/

[3] Plaintiff's allegation that Capt. Levack's license is "questionable" is subject to scrutiny pursuant to a Rule 11, FRCP. "[Rule 11]'s purpose is to bring home to the signer his responsibility to validate the truth and legal reasonableness of the paper's filed." *Am. Dairy Queen Corp. v. UAM, LLC,* No. 5:24-CV-01209-JKP, 2025 WL 1021579, at *5 (W.D. Tex. Mar. 14, 2025) (internal citations and quotation marks omitted). "A signature certifies to the court that the signer has read the document, has **conducted a reasonable inquiry into the facts** and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 542, 111 S. Ct. 922, 929, 112 L. Ed. 2d 1140 (1991) (emphasis added). No facts are alleged as to why Plaintiff asserts Capt. Levack's credentials are "questionable," but reasonable inquiry through a few keystrokes in any search engine would have conclusively shown otherwise.

4899-5998-8662, v. 1

4.    Plaintiff Assessment Technologies Institute, LLC ("Plaintiff" or "ATI") is a provider of copyright-protected nursing education resources and assessments.  *See* Complaint at ¶ 18.  ATI's products include its proprietary assessments (the "ATI Assessments"), which are used by nursing schools and nursing students "to assess student understanding of specific nursing topics." *Id.*

5.    ATI has registered certain ATI Proctored Exams using the U.S. Copyright Office's "secure test" procedure, which allows ATI to register the exams without leaving behind a public copy of the exam questions.  *See* Complaint at ¶¶ 27-28.  ATI has also registered copyrights in ATI Practice Exams with the U.S. Copyright Office.  *See* Complaint at ¶ 32.  ATI's copyrights are presently valid and subsisting, and have been valid and subsisting at all relevant times.  *See* Complaint at ¶¶ 31, 35.

6.    ATI takes the security and confidentiality of its copyrighted exams seriously, and has implemented a number security measures designed to prevent copying and distribution by proctors, instructors, and students with access to ATI's materials.  *See* Complaint at ¶¶ 36-58.  However, ATI does not allege that Capt. Levack was a proctor, instructor, or student with access to ATI's materials – because she is none of those things.

7.    In or about September 2025, Capt. Levack came across a job opening with Wizardry on Indeed.  Capt. Levack applied for the job, figuring that tutoring nursing students in her off-duty time would supplement her income to help put her kids through college while also keeping her own nursing skills sharp.  Wizardry hired Capt. Levack on or about September 19, 2025, and Capt. Levack began tutoring students shortly thereafter.

8.    At no time did Capt. Levack own any interest in Wizardry, nor does ATI allege that she had any such ownership.  Further, Capt. Levack was not a Manager, Officer, or any other type

4899-5998-8662, v. 1

of control person over Wizardry.  As ATI has alleged, Capt. Levack was merely a part-time employee of Wizardry.  See Complaint at ¶¶ 17, 63 (describing Capt. Levack as an "employee" of Wizardry).

9.      In late September 2025, ATI became aware that Defendant Wizardry Tutoring, LLC ("Wizardry") was providing ATI-branded materials to certain tutoring students.  *See* Complaint at ¶¶ 64.  ATI proceeded to collect evidence of Wizardry's various copyright violations, from selling ATI-branded materials to theft of ATI's copyrighted questions to providing students with paid subscriptions to services available through ATI's portals.  *See* Complaint at ¶¶ 66-70, 72-75, 86-104, 105-11.

10.     ATI sent at least one copyright takedown notice to Wizardry.  *See* Complaint at ¶ 71.  ATI does not allege that any takedown notice was sent to Capt. Levack.  In fact, it appears that Capt. Levack was not provided the courtesy of any notice before this lawsuit was filed.[4]

11.     When Wizardry failed to take down all of ATI's copyrighted materials in response to ATI's takedown notice, ATI conducted further investigation and brought this lawsuit against Wizardry, its principal Leslie Martinez ("Martinez"), an employee named April Santos, and Capt. Levack (apparently solely on the basis seeing Capt. Levack's name listed on the Wizardry website as a part time tutor).

### ARGUMENT & AUTHORITIES

**Legal Standard for a Rule 12(b)(6) Motion to Dismiss**

12.     "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff." *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at *6 (N.D. Tex. Sept.

---

[4] Capt. Levack's counsel reached out to ATI's counsel to confirm whether any notices were sent to Capt. Levack prior to filing this motion.  ATI's counsel could not identify any notices that were sent to Capt. Levack.

16, 2016) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002)).   While a complaint is not required to list detailed factual allegations, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted).

13.     "If the complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Instead, to nudge a claim across the line from conceivable to plausible, a plaintiff must plead facts that, if true, allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, and to rule out obvious alternative explanation[s] for the defendant's conduct." *Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, No. 24-889, 2026 WL 1593307, at *6 (U.S. June 4, 2026) (slip op.) (internal citations and quotation marks omitted)."A court is not to strain to find inferences favorable to the plaintiff and is not to accept [as true] conclusory allegations, unwarranted deductions, or legal conclusions." *St. Paul Commodities, LLC v. DB Fleet, LLC*, No. 3:09–CV–582–L, 2009 WL 3378598, at *2 (N.D.Tex. Oct. 21, 2009) (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir.2005)).

**ATI's Complaint Engages in Impermissible Group Pleading**

14.     The facts alleged in the Complaint are difficult to discern as they relate to Capt. Levack because ATI has made a number of claims against "Defendants" generally as a group. Armed only with knowledge that Capt. Levack was a tutor of some sort employed by Defendant

5

4899-5998-8662, v. 1

Wizardry, ATI implies that specific acts of Defendants Wizardry, Martinez and Santos may be attributed as well to Capt. Levack by defaulting to the plural "Defendants" in almost all of its allegations.  Such group pleading (also known as shotgun pleading) is disfavored in the Fifth Circuit, and courts can disregard allegations contained in group pleadings when considering a motion to dismiss if the group pleadings fail to provide adequate notice of the individual Defendant's alleged conduct and scienter.  *See, e.g., Bachman v. Serratos*, No. 3:25-CV-00284, 2026 WL 482892, at *4 (S.D. Tex. Feb. 20, 2026) ("[B]y improperly 'lumping [Martinez and Serratos] together and failing to identify specific actions of [Serratos]' in their complaint, Plaintiffs fail 'to raise an inference of plausible liability' against Serratos.") (citing *Callier v. Nat'l United Grp., LLC*, No. EP-21-cv-71, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021)); *Owens v. Jastrow*, 789 F.3d 529, 538 (5th Cir. 2015) (disregarding improper group-pleaded allegations when considering a 12(b)(6) motion); *Martinez v. City of N. Richland Hills*, 846 Fed. Appx. 238, 243 (5th Cir. 2021) (finding that, while group pleading is not necessarily fatal to a pleading, defendants are entitled to know what they did that is asserted to be wrongful and that the court could disregard "bare assertions of collective responsibility, unsupported by concrete factual allegations."); *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *4 (N.D. Miss. July 3, 2014) (dismissing a shotgun pleading when "numerous paragraphs in the complaint attribute discrete actions, such as the sending of a letter, or the public recording of a document, to all or multiple defendants without explaining the basis for such grouping or distinguishing between the relevant conduct of the named Defendants."); and *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum

standard [of FRCP 8]…").[5]

15.     In fact, "[s]hotgun pleadings are considered so objectionable, that they can even give rise to Rule 11 sanctions." *Copeland v. Axion Mortgage Group LLC*, No. 1:16CV159-HSO-JCG, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016).

16.     ATI's Complaint is replete with bare assertions of collective responsibility and implied culpability of one defendant for another's acts.  For example, ATI's repeated allegations that "Defendants" acted willfully and maliciously in stealing, copying, using and distributing copyrighted material.  *See, e.g.*, Complaint ¶¶ 9, 126, 141, 157, 159, 169.  Yet there are no factual allegations about any specific act or conduct on the part of Capt. Levack that could give rise to an inference of willful, malicious, or knowing conduct.[6]

17.     ATI also alleges that "Defendants had access to the ATI Assessments prior to the time that Defendants created their infringing works." Complaint ¶ 125.  Yet, nowhere in the Complaint does ATI plead any facts that indicate that Capt. Levack participated in the creation of the allegedly infringing works.  Nor does ATI plead *when* the infringing works were created at all. So far as creating a timeline, the most ATI pleads is that some students accessed materials through Wizardry's allegedly unauthorized accounts as early as March 2025 (Complaint at ¶ 94), that Wizardry advertised its services throughout 2025 (Complaint at ¶ 108), that ATI became aware of

---

[5] *See also S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) ("Appellants sued Phillips without knowing how he fit into the picture, apparently hoping that later discovery would uncover something…This shotgun approach to pleadings…is to be discouraged.") (internal citations omitted) (recognized as abrogated on other grounds by *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018 (5th Cir. 1994)).

[6] Even if these allegations were not improper group pleadings, adding information and belief in front of conclusory statements about knowledge or intent without factual support does not render the conclusory statements sufficient to survive a motion to dismiss. *See Rudy v. Werner Enterprises, Inc.*, No. PE:26-CV-00011-DC-DF, 2026 WL 1459205, at *4 (W.D. Tex. Mar. 13, 2026), amended on other grounds on reconsideration, No. PE:26-CV-00011-DC-DF, 2026 WL 1471910 (W.D. Tex. Apr. 28, 2026), report and recommendation adopted, No. P:26-CV-00011-DC, 2026 WL 1458505 (W.D. Tex. May 22, 2026)and report and recommendation adopted, No. P:26-CV-00011-DC, 2026 WL 1458505 (W.D. Tex. May 22, 2026) ("This Court does not think 'information and belief' can be stapled to an otherwise conclusory allegation—unsupported by other facts—to survive a motion to dismiss and open the doors of discovery.").

4899-5998-8662, v. 1

the infringing material in September 2025 (Complaint at ¶ 64), and that Wizardry was still selling allegedly infringing materials in March 2026 (Complaint at ¶ 78). Left unexplained is how Capt. Levack could have participated in acts which occurred before she was even hired (in September 2025).

18.    Furthermore, while ATI does allege that Defendants Martinez and Santos had access to ATI's materials through instructor accounts, there are no individualized allegations that Capt. Levack had such access (because, as ATI is aware, she did not). *See* Complaint ¶¶ 89-91. If Capt. Levack had no access to materials through an instructor account and no control over Wizardry, how could she have had access to ATI's Assessments before she was hired by Wizardry and/or before Wizardry created the allegedly infringing works? The Complaint provides no answers, just bare conclusory allegations.

19.    The Complaint also alleges that "Defendants" improperly established eleven accounts, most of which were student accounts, with illegitimate purposes. See Complaint at ¶ 86. Again, the only specific allegations about anyone creating improper accounts are against Defendants Martinez and Santos. If ATI believes that Capt. Levack participated in creating improper accounts, that is certainly unclear from the pleadings. She certainly could not have done so in March 2025, before even becoming aware of Wizardry. As the owner of the platform, ATI is well-positioned to determine through reasonable due diligence whether Capt. Levack created accounts on their platform. Indeed, the Complaint indicates that ATI conducted a detailed investigation of Wizardry's accounts. See Complaint at ¶¶ 93-99. If ATI had specific evidence of accounts created by Capt. Levack, it stands to reason that the Complaint would have included individualized allegations regarding the same.[7] The specificity of factual allegations against the

---

[7] It is not enough for ATI to argue that it was casting a broad net in the hope that individualized evidence might later come out in discovery to support its allegations. This is not the sort of evidence that is peculiarly in the control of

other Defendants, coupled with the absence of such specific allegations as to Capt. Levack, makes use of the generic phrase "Defendants" in liability counts particularly inappropriate.

20.     ATI's group pleadings even infect Count 6, which is only pled against Defendants Martinez and Santos.  Despite this, that count states that "Defendants' access to and use of the ATI platform was therefore without authorization…." Complaint at ¶ 185.  "Defendants" is defined to include Capt. Levack in the Complaint's opening paragraph.  Is ATI alleging that Capt. Levack accessed its platform without authorization?  There is no how or when asserted as to Capt. Levack, so it would seem not, but the wording is ambiguous and does not provide Capt. Levack a fair opportunity to determine whether this allegation includes her.

21.     In all, the Complaint contains over <u>one hundred fifty (150)</u> collective references to "Defendants" and only mentions Capt. Levack individually in <u>nine (9)</u> instances.  Of those nine instances, one is in the case caption, one is in the opening paragraph, two are in the "Jurisdiction, Parties, and Venue" Section, and one is in the heading of Count II.  That leaves four times that Capt. Levack is substantively mentioned in the entire 45-page Complaint.

22.     The individual factual allegations against Capt. Levack are that she was an employee of Wizardry (Complaint at ¶ 17, 63), she offered one-on-one hour-long tutoring sessions at a cost of $65 per session (Complaint at ¶ 82), and that she offered 30-minute ATI Private Prep sessions at a cost of $35 per session (Complaint at ¶ 83).  Appended to the latter two mentions is a statement that ATI suspects Capt. Levack may have used or viewed ATI's copyrighted material.  The Complaint contains a further conclusory statement that Capt. Levack committed contributory copyright infringement (Complaint at Prayer), which the Court can disregard because it contains

---

Capt. Levack, and using shotgun pleadings as a way to elicit discovery in lieu of conducting reasonable inquiry in advance is sanctionable conduct.  *See S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) (recognized as abrogated on other grounds by *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018 (5th Cir. 1994)).

4899-5998-8662, v. 1

no factual allegations.

**23.**     With just these three individualized factual assertions, ATI asserts that Capt. Levack engaged in Copyright Infringement (Count 1), Contributory Copyright Infringement (Count 2), Misappropriation of Trade Secrets Under State Law (Count 3), Federal Misappropriation of Trade Secrets (Count 4), and Unfair Competition (Count 5).   Such pleadings cannot suffice to put Capt. Levack on notice of her alleged individual wrongful acts and alleged individual state of mind between and among the myriad allegations and counts in the Complaint.

**ATI Fails to State a Claim that Capt. Levack Engaged in Contributory Copyright Infringement**

28.     "The provider of a service is contributorily liable for a user's infringement if it intended its service to be used for infringement." C*ox Communications, Inc. v. Sony Music Entm't*, 146 S. Ct. 959, 964 (2026). "A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (internal citations and quotations omitted).

29.     It is undisputed that the service that Capt. Levack provided was tutoring sessions for nursing students.  Capt. Levack, as a mere employee of Wizardry, had no reason to know or believe that Wizardry was using ATI's copyrighted materials without permission.  Indeed, no such reason or factual circumstances showing the knowledge of Capt. Levack is suggested by ATI in the Complaint.  Outside of improper group pleadings and conclusory statements, ATI has failed to allege any facts that show Capt. Levack had "knowledge of the infringing activity."  Nor has ATI provided information from which the Court could infer that Capt. Levack knew that Wizardry was infringing on ATI's copyrights.

30. The key element in a contributory copyright infringement claim is intent. "The intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement." *Cox Communications, Inc. v. Sony Music Entm't*, 146 S. Ct. 959, 967 (2026) (internal citations omitted). As the Supreme Court recently explained, these are the only two grounds for contributory copyright infringement liability. *Id.* and *Id.* at 970-971 (Sotomayor, J., concurring in judgment but dissenting from limiting contributory copyright infringement). The two forms of contributory copyright infringement track the law of contributory patent infringement. *Id.* at 968.

31. "A service is tailored to infringement if it is not capable of substantial or commercially significant noninfringing uses." *Cox Communications, Inc. v. Sony Music Entm't*, 146 S. Ct. 959, 967 (2026) (internal quotation marks and citations omitted). Capt. Levack provided tutoring services to nursing students on a variety of topics, primarily focused on body systems. There can be no realistic argument that tutoring sessions and services provided by a registered nurse who is a nurse case manager in the Soldier Recovery Unit of the Army Medical Corps cannot be provided in a manner that is commercially significant and non-infringing. Nor has ATI alleged that Capt. Levack or even Wizardry *only* provided tutoring services which infringed on ATI's copyrights.

32. "A provider induces infringement if it actively encourages infringement through specific acts." *Cox Communications, Inc. v. Sony Music Entm't*, 146 S. Ct. 959, 967 (2026). "[F]undamentally, inducement must involve the taking of affirmative, as opposed to passive, steps to bring about the desired result of patent infringement." *Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, No. 24-889, 2026 WL 1593307, at *6 (U.S. June 4, 2026) (internal citations and quotation marks omitted).

11

33.    Although *Hikma* involved contributory patent infringement, the case is instructive here because contributory copyright infringement and contributory patent infringement track each other.  In that case, the Court found that the plaintiff had failed to allege more than a sheer possibility that the defendant had induced patent infringement because there were obvious alternative explanations of the defendant's conduct, the plaintiff had inappropriately relied on "mere omissions, inactions, or nonfeasance" of the defendant to make an inducement case, and the remaining allegations of inducement were premised on vague statements.. *Id*. at *7.

34.    The same is true of Capt. Levack.  First, because ATI never sent Capt. Levack any sort of copyright infringement notice, an obvious explanation would be that she reasonably believed her employer had secured all appropriate licenses and was ensuring compliance with applicable copyright laws.[8]  After all, as ATI points out, Wizardry had a notice on its website warning customers about the stiff fines for copyright violations.  *See* Complaint at ¶ 85.  Second, ATI nowhere alleges that Capt. Levack, individually, had access to its copyrighted materials (much less actually accessed them) or had any way to know that Wizardry did not have the appropriate licenses.  At best, ATI can say that Capt. Levack failed to independently verify and  confirm that her employer maintained appropriate intellectual property licensing regarding materials that she herself never had occasion to view or use as an employee. Absent a showing that Capt. Levack was serving as some sort of compliance officer for Wizardry, this cannot be the basis of any tort or contractual claim under Texas or Federal law, much less a contributory infringement claim.

---

[8] Although decided under the Computer Fraud and Abuse Act, *Abu v. Dickson*, 107 F.4th 508 (6th Cir. 2024) is instructive on this point.  In that case, the Sixth Circuit held that "An employee…does not intentionally exceed authorized access when he deliberately accesses a protected system but lacks notice that his access is unauthorized." Here, as there, Capt. Levack had no notice that ATI had not authorized access to its systems.  Nor has ATI pled that any such notice was provided to Capt. Levack.  See also *NRA Group, LLC v. Durenleau*, 154 F.4th 153 (3d Cir. 2025), cert. denied, 224 L. Ed. 2d 362 (Mar. 30, 2026).

4899-5998-8662, v. 1

35.     While ATI does allege that Martinez and Wizardry knew that Wizardry was infringing on ATI's copyrights and took affirmative steps to market infringing products, nowhere does ATI allege facts tending to show that Capt. Levack knew this or had any personal involvement in  marketing infringing products.

36.     Count 2 of the Complaint should be dismissed as to Capt. Levack.

**ATI Fails to State a Claim that Capt. Levack Misappropriated Trade Secrets under Texas or Federal Law**

37.     The Texas Uniform Trade Secrets Act ("TUTSA") provides the law regarding misappropriation of trade secrets in Texas.  "The elements of a TUTSA misappropriation of trade secrets claim are: (1) the existence of a trade secret, (2) the defendant acquired the trade secret through a breach of a confidential relationship or discovered by it improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *NE Shore Techs., Inc. v. Prof'l Credentials Exch., Inc.*, No. CV 4:23-3413, 2024 WL 3446362, at *5 (S.D. Tex. June 21, 2024), report and recommendation adopted, No. 4:23CV3413, 2024 WL 3448014 (S.D. Tex. July 16, 2024).  These closely mirror the elements of a misappropriation claim under the Defend Trade Secrets Act ("DTSA"), which are "(1) ownership of a trade secret that (2) has been misappropriated and that (3) relates to a product or service in interstate commerce." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 594 (E.D. Tex. 2021), aff'd sub nom. *Providence Title Co. v. Fleming*, No. 21-40578, 2023 WL 316138 (5th Cir. Jan. 19, 2023)

38.      Improper means include theft, bribery, misrepresentation, breach of a duty to maintain secrecy, or espionage through other electronic means.  *See* Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6).

39.     ATI has not alleged that Capt. Levack, individually, acquired ATI's copyrighted materials by breaching a confidential relationship.  After all, Capt. Levack had no relationship with

ATI.  Nor have they alleged any facts to show that Capt. Levack stole the materials, misrepresented herself to ATI, breached any duty to ATI, or committed espionage through electronic means.  At most, Capt. Levack is alleged to have been an employee of Wizardry with knowledge that Wizardry offered content related to ATI's Assessments.

40.     It is possible to make a claim against a person who acquires a trade secret and knows or has reason to know the trade secret was acquired by improper means (Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A)) or who discloses a trade secret and knew or had reason to know that the trade secret was derived through a person who used improper means to acquire the trade secret (Tex. Civ. Prac. & Rem. Code § 134A.002(B)(ii)(a)) or through a person who owed a duty to maintain secrecy of the trade secret (Tex. Civ. Prac. & Rem. Code § 134A.002(B)(ii)(c)). TUFTA's definition of misappropriation mirrors the one found in 18 U.S.C. § 1839(5). All of these circumstances hinge on the knowledge of the person allegedly misappropriating the trade secret.

41.     ATI has provided no more than conclusory allegations regarding Capt. Levack's state of mind. There are no allegations of factual circumstances tending to show that Capt. Levack knew or had reason to know that Wizardry and Martinez acquired ATI's trade secrets through improper means.  Instead, ATI's conclusory allegations typically refer to Defendants or "each Defendant" with no distinction between the individual or corporate Defendants.  To be sure, the Court could infer from the pleadings that Santos and Martinez, who allegedly had instructor accounts with ATI and allegedly accessed ATI's materials using such accounts, knew or should have known that ATI's trade secrets were being acquired through improper means.  However, Capt. Levack is not alleged to have had an ATI account.  She certainly is not alleged to have had an instructor account.  She is not alleged to have downloaded ATI's materials.  The mere fact that Capt. Levack was employed by Wizardry is not enough to give rise to an inference that she knew

14

or should have known that her employer was misappropriating ATI's trade secrets, especially when ATI did not provide Capt. Levack with any such notice.

42.     ATI has failed to state a claim against Capt. Levack for misappropriation of trade secrets under state or federal law.  As such, Counts 3 and 4 of the Complaint should be dismissed as to Capt. Levack.

### ATI Fails to State a Claim for Unfair Competition

43.     "[U]nfair competition is not an independent tort under Texas law." *In re Superior Air Parts, Inc.*, 486 B.R. 728, 743 (Bankr. N.D. Tex. 2012), aff'd sub nom. *Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. May 15, 2014) (internal quotations omitted).  Rather, it is an umbrella term for causes of action arising out of dishonest business conduct.  *See Minka Lighting, Inc. v. Craftmade Intern., Inc.*, No. CIV.A. 3:00-CV-0888G, 2002 WL 31495990, at *2 (N.D. Tex. Nov. 4, 2002).  "The tort requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business…." *Id.*

44.     Furthermore, to the extent that ATI's unfair competition claim relies on the same facts as its misappropriation of trade secrets claim, the unfair competition claim is pre-empted by TUTSA.  *See, e.g., UOP LLC v. Exterran Energy Sols., L.P.*, No. MO:20-CV-233-DC, 2021 WL 4096560, at *7 (W.D. Tex. Aug. 26, 2021); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17–CV–444–RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018) ("TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information.").

45.     Outside of improper group pleading and conclusory statements, ATI has failed to allege that Capt. Levack engaged in any illegal act.  Capt. Levack allegedly provided tutoring

15

sessions, which is not illegal. She was allegedly employed by Wizardry, which is not itself illegal. She had no knowledge of Wizardry's alleged copyright infringement or misappropriation of trade secrets. She is not alleged to have created the infringing materials. She is not alleged to have had access to ATI's materials, which Wizardry allegedly took and copied. Indeed, the first two substantive paragraphs of Count 5 focus entirely on the alleged illegal conduct of Defendants Martinez and Santos, further underscoring Capt. Levack's lack of involvement.[9]

46.    Moreover, ATI cannot escape that its claim for unfair competition rests on Defendants Martinez's and Santos's alleged access to ATI's proprietary information and use thereof. See Complaint at ¶¶ 175-79. Therefore, TUTSA's preemption provision applies, and ATI cannot separately make a claim for unfair competition.

47.    It is submitted that the only reason Capt. Levack is in this suit is because she was listed as a tutor on Wizardry's website. Surely something more than that is required to file pleadings in the United States District Court for the Western District of Texas accusing a decorated, active-duty Army officer (with a Secret security clearance) of illegal acts involving theft of trade secrets.

48.    Accordingly, Count 5 of the Complaint should be dismissed as to Capt. Levack.

---

[9] Capt. Levack notes that, although paragraphs 177-181 refer to "Defendants," they do so inconsistently. For example, paragraph 179 mentions "their" instructor accounts, referring to Defendants collectively – but only Defendants Martinez and Santos are alleged to have had instructor accounts. See Complaint at ¶ 89, 185. This underscores how ATI's improper group pleading creates ambiguity and fails to properly put Capt. Levack on notice of the wrongful conduct which ATI alleges that she individually committed.

16

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Lisa Levack requests that the Court dismiss Counts 1, 2, 3, 4, and 5 of the Complaint as pled against her with prejudice. Defendant further requests that the Court award Defendant all further relief, at law or in equity, to which she may be entitled.

Dated this 19th day of June 2026.

Respectfully submitted,

**PULMAN LEFLORE PULLEN & REED LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Byron L. LeFlore, Jr.*
         Byron L. LeFlore, Jr.
         Texas State Bar No. 12161070
         bleflore@pulmanlaw.com
         Matthieu Belanger-Coast
         Texas State Bar No. 24128756
         matthieu@pulmanlaw.com

***ATTORNEYS FOR DEFENDANT LISA LEVACK***

17

4899-5998-8662, v. 1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 19th day of June, a true and correct copy of the foregoing document was served via the Court's CM/ECF System or via the method indicated as follows:

***Via CM/ECF:*** *courtney.giles@bakermckenzie.com*
Courtney E. Giles
BAKER & McKENZIE
800 Capitol Street Suite 2100
Houston, TX 77002
***Counsel for Plaintiff,***
***Assessment Technologies Institute, L.L.C.***

***Via email:*** *jennifer.semco@bakermckenzie.com*
Jennifer Ancona Semko
BAKER & McKENZIE LLP
815 Connecticut Ave NW
Washington, DC 20006
***Counsel for Plaintiff,***
***Assessment Technologies Institute, L.L.C.***

***Via USCMRRR 7022 2410 0001 5323 3728***
***and Via US First Class Mail***
LESLIE LEIGHANN MARTINEZ
8635 Sierra Sky
San Antonio, TX  78254
***Pro Se Defendan***t

***Via USCMRRR 7022 2410 0001 5323 3735***
***and Via US First Class Mail***
APRIL SANTOS
5565 Mansion Bluffs, Apt. 4706
San Antonio, TX  78245
***Pro Se Defendant***

***Via USCMRRR 7022 2410 0001 5323 3742***
***and Via US First Class Mail***
WIZARDRY TUTORING, LLC
8635 Sierra Sky
San Antonio, TX  78254
***Pro Se Defendant***

*/s/ Byron L. LeFlore, Jr.*
Byron L. LeFlore, Jr.

18

4899-5998-8662, v. 1